■ MAURICE GRAUBART & SONS, INC., et al., Appellants, v JOHN DI GUILIO, INC., et al., Respondents, et al., Defendant.— Casey, J. Appeals (1) from that part of an order of the Supreme Court (Doran, J.), entered August 1, 1989 in Schenectady County, which granted defendant Niagara Mohawk Power Corporation's cross motion for summary judgment, *inter alia,* dismissing the complaint against it, and (2) from an order of said court, entered October 18, 1989 in Schenectady County, which, *inter alia,* granted defendant John Di Guilio, Inc.'s motion for summary judgment dismissing the complaint against it.

A water main break in the vicinity of the intersection of Franklin and Jay Streets in the City of Schenectady, Schenectady County, caused the nearby basement premises of plaintiffs to flood, with resulting damage. As a consequence, plaintiffs sued defendants City of Schenectady, Niagara Mohawk Power Corporation (hereinafter NIMO) and John Di Guilio, Inc., the prime contractor on the replacement of the roadway and sidewalks of Jay Street with a pedestrian walkway, which was completed several months prior to the water main break. It is conceded that backhoes and jackhammers had been used in the general vicinity of the break to remove pavement, but Di Guilio had only worked about one foot down into Franklin Street. Di Guilio's work also included the abandonment and/or removal of two stormwater catch basins and the plugging of a clay pipe which connected one of the catch basins to a manhole in the sanitary sewer system, to prevent storm water from entering the sanitary sewer system.

During the project, NIMO replaced an existing gas main in Jay Street about 36 inches beneath the roadway and seven feet from the west curb on Jay Street. The only additional work performed by NIMO was to raise the manhole covers to meet the level of the sidewalk and to install holes in the covers to permit passage of the street light conduits which Di Guilio had installed. At the site of the break, various subterranean utility lines and pipes had previously been installed by every utility that serviced the city, including NIMO. When the debris was cleaned away and the water shut down at the time

of the break, the discharge of the water was traced to a rusted and corroded plug that had broken off the water main.

Following joinder of issue, the city moved and NIMO cross-moved for summary judgment dismissing the complaint. Subsequently, Di Guilio moved for summary judgment dismissing the complaint against it and NIMO cross-moved for summary judgment as to the cross claim asserted against it by Di Guilio. Supreme Court denied the city's motion, granted Di Guilio's motion and granted both of NIMO's motions. Plaintiffs appeal the orders granting summary judgment to NIMO and Di Guilio.

In response to defendants' argument that the cause of the water main break was unknown and, therefore, could not be traced to any act or omission by defendants, plaintiffs argued that irrespective of the cause of the water main break there was evidence that defendants' negligence caused or contributed to plaintiffs' damages. In particular, plaintiffs claim that water from the break followed the path of least resistance and flowed into the sanitary sewer system through cracks in the clay pipe that ran between one of the abandoned catch basins and the manhole in the sanitary sewer system. The volume of flow into the sewer system was so large, according to plaintiffs, that it caused a back up into their basements. Plaintiffs contend that the cracks in the clay pipe were caused by NIMO's placement of an electrical conduit embedded in concrete directly on top of the clay pipe at some unknown time, thereby transmitting traffic loads directly from the street to the pipe, and by Di Guilio's failure to remove the pipe or plug it at the manhole end. Supreme Court rejected plaintiffs' argument, finding no expert testimony that the cracks in the clay pipe were the cause of water getting into plaintiffs' basements. We disagree.

In his examination before trial, the City Water Superintendent testified that his observations at the time of the break led him to believe that the greater volume of water was being discharged to the catch basin pipe into the manhole and thereby into the sanitary sewer. He also explained that the volume of water entering the sanitary sewer system was such that the water was going back, up against grade, seeking its own level, through floor drains and other below-grade fixtures into private cellars. He also testified that although the clay pipe was plugged at the catch basin end, there was no plug at the manhole end, and he was of the opinion that the cracks in the clay pipe were caused by the placement of NIMO's conduit directly on top of the pipe. Defendants attack plaintiffs' theory

and the supporting testimony as implausible and speculative, and they suggest that water could have entered the sanitary sewer system in other ways, but they offered no expert proof to contradict plaintiffs' theory in support of their motions for summary judgment. In these circumstances, the motions should have been denied.

Order entered August 1, 1989 modified, on the law, by reversing so much thereof as granted the motions of defendant Niagara Mohawk Power Corporation; said motions denied; and, as so modified, affirmed; order entered October 18, 1989 reversed, on the law, and defendant John Di Guilio, Inc.'s motion denied, with one bill of costs to plaintiffs. Kane, J. P., Casey, Mercure and Harvey, JJ., concur; Levine, J., not taking part.